UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANTHONY BRIDGEWATER, <br>     *Plaintiff*, <br> <br>     *vs.* <br> <br> CITY OF INDIANAPOLIS and DETECTIVE CHAD OSBORNE, <br>     *Defendants.* | ) <br> ) <br> ) <br> )   1:14-cv-01370-JMS-MJD <br> ) <br> ) <br> ) <br> ) |

**ORDER**

    This Order addresses several evidentiary issues related to the upcoming trial in this case, scheduled for October 3, 2016. Specifically, the Court addresses the parties' filings since the Court's September 9, 2016 Entry, and issues that remained outstanding after the September 8, 2016 final pre-trial conference.

    **I.**     **Plaintiff's Witnesses**

    As background, the Court notes that a point of contention at the final pre-trial conference was Plaintiff's failure to disclose several witnesses until August 25, 2016 – long after the deadline for witness disclosures had passed. At the final pre-trial conference, the Court took under advisement Defendants' objections to several of those witnesses (including Plaintiff's medical care providers). In order to analyze whether Plaintiff's medical care providers should be permitted to testify, the Court ordered Plaintiff to "submit any medical records reflecting [their] treatment of Mr. Bridgewater that he intends to introduce at trial to the Court and to Defendants' counsel" by

1

September 12, 2016. [Filing No. 102 at 3.][1] Plaintiff submitted twelve pages of records. [*See* Filing No. 104-3.][2] As to Hannah Slack, a non-medical provider, the Court ordered Plaintiff to "make Ms. Slack available for Defendants' counsel to interview as soon as possible," so that Defendants could report to the Court by September 12, 2016 any specific objections they have to Ms. Slack's anticipated testimony. [Filing No. 102 at 3.] The Court has reviewed the parties' submissions, and is prepared to rule on the outstanding evidentiary issues.

### A. *Plaintiff's Medical Providers*

Defendants have moved to preclude Plaintiff from calling several of his medical providers at trial, namely Kareema Boykin, Matthew Kuchinski, Jeanne Vrabel, and Timothy Salmons. [*See* Filing No. 88.] At the outset, the Court notes that the Case Management Plan entered in this case explicitly states that the trial witness list "may not include any witnesses not on a party's final witness list filed pursuant to section III.F." which, in this case, was due on January 5, 2016 (for expert witnesses). [Filing No. 17 at 3; Filing No. 17 at 6.] The deadline for providing a final witness list for non-expert witnesses was March 5, 2016. [Filing No. 17 at 3.] The Court's Case Management Plan is designed so that the parties must identify their universe of witnesses well ahead of trial, opposing parties may depose those individuals if they desire, and the parties can whittle their witness lists down to the individuals they intend to call at trial shortly before trial

---

[1] Plaintiff appears to be under the mistaken assumption that the Court ruled at the pre-trial conference that Plaintiff's medical providers could testify as to medical records reflecting their treatment. [*See, e.g.*, Filing No. 107 at 1 ("Pursuant to the direction at the Final Pre-trial Conference, Ms. Boykin will testify to information contained within the medical records and the treatment she provided").] As reflected in the Court's September 9, 2016 Order, the Court took Defendants' objections to the medical providers under advisement, and did not make any ruling regarding whether they could testify.

[2] Plaintiff submitted the records to Defendants' counsel and to the Court, but did not file them. Defendants, however, attached the records Plaintiff submitted to their Report Addressing Objections to Anticipated Testimony and Medical Records. [Filing No. 104; Filing No. 104-3.]

2

takes place. The Case Management Plan does not allow parties to identify witnesses for the first time in the trial witness list, yet that is what Plaintiff did in this case. Plaintiff disclosed his medical providers for the first time in an August 25, 2016 witness list, well after the March 5, 2016 deadline for doing so. [Filing No. 80.]

If a party fails to disclose a witness as required, that "party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Novak v. Board of Trustees of Southern Illinois University*, 777 F.3d 966, 973 (7th Cir. 2015) ("Failure to comply with the disclosure requirements of Rule 26(a) results in automatic and mandatory exclusion of the proferred witness 'unless the failure was substantially justified or is harmless'").

The Court finds that Plaintiff's failure to identify Kareema Boykin, Matthew Kuchinski, Jeanne Vrabel, and Timothy Salmons – all individuals who purportedly provided medical care to Plaintiff – as witnesses was neither substantially justified nor harmless. Plaintiff has not set forth any valid reason why those witnesses were not timely disclosed, and Defendants would be prejudiced if they were allowed to testify because Defendants have worked under the assumption that they would not be called and so did not depose them.[3] Trial is now less than two weeks away, and it is far too late for depositions to occur. *See Novak*, 777 F.3d at 973 (excluding expert witness testimony where experts were disclosed after deadline for doing so and "[t]he disclosures were…so late that defendants had no opportunity to depose [them]").

---

[3] The Court rejects Plaintiff's argument that Defendants were not prejudiced because "Plaintiff has provided a medical authorization so that Defendants' counsel may contact this witness directly and interview [him or her]." [Filing No. 107 at 1-3.] Simply providing a medical authorization does not absolve Plaintiff of the responsibility to disclose to Defendants who he intends to call as a witness at trial. Deposing witnesses is expensive – particularly medical providers – and Defendants were entitled to rely on Plaintiff's witness lists in making decisions regarding whom to depose.

At the final pre-trial conference, the Court gave Plaintiff a chance to attempt to cure any prejudice Defendants might suffer if the medical providers were allowed to testify as to the contents of Plaintiff's medical records, ordering Plaintiff (as discussed above) to submit any medical records he intends to introduce at trial to the Court and to Defendant's counsel by September 12, 2016. Plaintiff only submitted records from Dr. Kuchinski, [Filing No. 104-3 at 1; Filing No. 104-3 at 11-12], Dr. Benjamin Rase and Dr. Amy Rhodes, [Filing No. 104-3 at 2], Dr. Donald Hillhouse, [Filing No. 104-3 at 3-6], and Dr. Salmons, [Filing No. 104-3 at 7-10].[4] Because Plaintiff did not submit records for Kareema Boykin or Jeanne Vrabel, those individuals cannot testify even as to medical records reflecting their treatment. As to Dr. Kuchinski, the Court cannot discern from the three pages of records reflecting his name whether he actually treated Mr. Bridgewater. [Filing No. 104-3 at 1; Filing No. 104-3 at 11-12.] He is not permitted to testify as to those records. Records relating to Dr. Salmons' treatment of Mr. Bridgewater reflect extensive statements from Mr. Bridgewater's mother, and the Court finds that Defendants would be prejudiced if Dr. Salmons were permitted to testify as to those records given that Defendants did not have adequate notice that he would testify.

In sum, because Plaintiff's failure to disclose Kareema Boykin, Matthew Kuchinski, Jeanne Vrabel, and Timothy Salmons as witnesses was neither substantially justified nor harmless, and since Plaintiff either did not submit medical records to alleviate the Court's concerns regarding prejudice, or the medical records Plaintiff submitted did not alleviate those concerns, those individuals are not permitted to testify at trial. Defendants' objections as to Kareem Boykin, Matthew Kuchinski, Jeanne Vrabel, and Timothy Salmons, [Filing No. 88], are **SUSTAINED**.

---

[4] Plaintiff has never disclosed Drs. Rase, Rhodes, or Hillhouse as witnesses.

4

### B. Hannah Slack

At the final pre-trial conference, the Court took under advisement Defendants' objection to Hannah Slack, and ordered Plaintiff "to make Ms. Slack available for Defendants' counsel to interview as soon as possible" so that Defendants could address any specific objections to her anticipated testimony by September 15, 2016. [Filing No. 102 at 3.] Defendants report that "Plaintiff has not identified [Ms.] Slack's availability for an interview or a deposition and Defendants are unable to reach [her] at the number Plaintiff provided the Court." [Filing No. 104 at 5.] Plain-tiff responds that he "has made this witness available and invited counsel to feel free to contact her directly and interview or set up a deposition if they wish." [Filing No. 107 at 1.]

Again, Plaintiff disclosed Ms. Slack as a witness well after the deadline for doing so. The Court finds that this failure was not substantially justified and was not harmless. Like Plaintiff's medical providers, Plaintiff has not offered any justification for not timely identifying Ms. Slack as a witness, and Defendants would be prejudiced by allowing her to testify because it is now too late to depose her. See *Novak*, 777 F.3d at 973.

At the final pre-trial conference, the Court gave Plaintiff an opportunity to cure any prejudice Defendants might suffer by ordering Plaintiff to make Ms. Slack available for Defendants' counsel to interview as soon as possible. [Filing No. 102 at 3.] The record indicates that Plaintiff's only effort to make Ms. Slack available to Defendants was to provide a telephone number, and that Defendants have not been able to reach Ms. Slack at that telephone number. Simply providing Ms. Slack's telephone number was not what the Court had in mind when it ordered Plaintiff to "make Ms. Slack available for Defendants' counsel to interview." [*See* Filing No. 102 at 3.] Because Plaintiff has not made Ms. Slack available for Defendants' counsel to interview, and since

she was not timely identified as a witness, she is precluded from testifying at trial. Defendants' objection to Ms. Slack testifying at trial, [Filing No. 88], is **SUSTAINED**.

## II.    Plaintiff's Medical Records

Defendants objected to Plaintiff's trial exhibits 1 through 3, which include: (1) "Certified medical records of Anthony Bridgewater from Eskenazi Hospital of November 6, 2013 and thereafter"; (2) "Certified medical records of Anthony Bridgewater from St. Francis Health Department (HealthPort) of November 6, 2013 and thereafter"; and (3) "Certified medical records of Anthony Bridgewater from St. Friscan [sic] Alliance pertaining to Anthony's treatment of November 6, 2013 incident and thereafter." [Filing No. 87 at 2-3.] Defendants argued in their objection, among other things, that the medical records contain hearsay statements. [Filing No. 89 at 1-2.] At the final pre-trial conference, the Court took Defendants' objections under advisement and ordered Plaintiff to "submit any medical records reflecting treatment of Mr. Bridgewater from the day of the incident that he intends to introduce at trial to the Court and to Defendants' counsel by September 12, 2016." [Filing No. 102 at 4.] As noted above, Plaintiff submitted twelve pages of records. Because this is all that Plaintiff submitted, the Court considers these to be the only records that Plaintiff intends to introduce at trial. Defendants object to the admissibility of the handwritten medical records, and also object to the records in the form submitted by Plaintiff but request further redactions.

As to the handwritten records, the Court **OVERRULES** Defendants' objection and finds that those records are admissible to the extent that Plaintiff provides the Court with a certification for those records. While some of the handwriting is difficult to read, the Court finds that it would not be prejudicial to allow the jury to attempt to discern them.

6

As to redactions, the Court has reviewed both Plaintiff's submitted medical records, [Filing No. 104-3], and Defendants' proposed redactions, [Filing No. 104-4].  The Court agrees with Defendants' proposed redactions, as those redactions remove references that could be prejudicial.  The redactions include references to "assault" as a diagnosis, [Filing No. 104-3 at 1; Filing No. 104-3 at 3-8.]  The Court also agrees that: (1) Ms. Bridgewater's statements appearing on page 7 of the medical records, [Filing No. 104-3 at 7], should be redacted as they are hearsay; (2) the statement "no history of psychiatric medications" on page 8 of the medical records, [Filing No. 104-3 at 8], should be redacted because the Court granted Plaintiff's motion in limine to preclude references to Plaintiff's mental health issues; and (3) the statement "no legal" on page 8 of the medical records, [Filing No. 104-3 at 8], should be redacted because the Court granted Plaintiff's motion in limine to preclude references to Plaintiff's prior criminal record or police interactions.

Further, the Court agrees with Defendants that the medical billing information Plaintiff redacted reflecting the amounts by which the bills were discounted should not be redacted.  [*See* Filing No. 104-3 at 11-12.]  Plaintiff relies on *Patchett v. Lee*, 46 N.E.3d 476 (Ind. Ct. App. 2015), for the proposition that a write off from a public assistance program is not admissible. [*See* Filing No. 107 at 4.]  But the "public assistance program" at issue in *Patchett* was actually a program that required members to make monthly contributions toward coverage.  *Id.* at 485 ("the parties do not dispute that [plaintiff] was a member of HIP, which functioned as her health insurer, and that she made monthly contributions towards coverage").  Here, Plaintiff does not represent that he made contributions toward coverage to the Wishard Advantage Plan, so that plan is not the type of insurance plan at issue in *Patchett* and referenced in Indiana's collateral source statute.  *See* Ind. Code 34-44-1-2(1)(B) ("In a personal injury or wrongful death action, the court shall allow the admission into evidence of: (1) proof of collateral source payments other than:…(B) insurance

benefits that the plaintiff or members of the plaintiff's family have paid for directly…."). The Court notes that whether the amount the Wishard Advantage Plan ultimately paid would be admissible is not an issue that has been presented to the Court. That information would at least be more helpful in terms of showing what amount was reasonable for the medical services Plaintiff received. But records reflecting those amounts are not among those submitted by the parties for introduction at trial.

In sum, the medical records Plaintiff submitted to the Court and Defendants' counsel, [Filing No. 104-3], may be introduced at trial, but only to the extent they are redacted as proposed by Defendants and appearing at Filing No. 104-4, and only to the extent that Plaintiff can provide a proper certification corresponding with each of those records. The parties are encouraged to agree to a more professional method of redaction than the strike-outs contained in Filing No. 104-4.

### III.     Defendants' Motions in Limine

At the final pre-trial conference, the Court took under advisement Defendants' Motions in Limine #4, #6, and #7. [Filing No. 102 at 6.] The Court addresses each in turn.

#### A. Motion in Limine #4

In Motion in Limine #4, Defendants seek to exclude "[a]ny reference, evidence or testimony as to any public accounts or lawsuits concerning the City of Indianapolis, the Indianapolis Metropolitan Police Department, or any other police department." [Filing No. 85 at 4-5.] They also request that the Court prohibit "abstract references to events with statements such as 'as we have seen in the newspaper,' 'as we have heard on the nightly news,' etc." [Filing No. 85 at 5.] Defendants argue that such testimony is not relevant and "would only serve to inflame the jury's emotions and obscure the issues in this case." [Filing No. 85 at 4-5.] Plaintiff simply responds

8

that he "should not be precluded from making statements of local and national concern," and that "Defendants cite no legal authority to support this position." [Filing No. 93 at 2.]

The Court finds that reference to other public accounts or lawsuits concerning the City of Indianapolis, the Indianapolis Metropolitan Police Department, or any other police department, or any reference to the general climate in the country relating to the use of force by police is generally irrelevant to this case, which must be evaluated on the facts of this case alone. Further, the Court finds that such statements could cause prejudice, which would outweigh any potential probative value those statements have. Accordingly, the Court **GRANTS IN PART** Defendants' Motion in Limine #4. However, the parties are not precluded from inquiring of potential jurors as to the topic of the use of force by police and any feeling they may have about what they have read or seen in news accounts, or experienced personally.

### B.  Motion in Limine #6

In Motion in Limine #6, Defendants seek to exclude any testimony from an expert, treating physician, or other medical provider. [Filing No. 85 at 7.] Defendants' Motion in Limine #6 is **GRANTED** – the Court has already found in connection with Defendants' objections to Plaintiff's witness list that those individuals may not testify at trial.

### C.  Motion in Limine #7

In Motion in Limine #7, Defendants request that evidence or argument concerning Plaintiff's medical records be precluded. [Filing No. 85 at 7.] Motion in Limine #7 is **GRANTED IN PART** to the extent that no medical professionals will be permitted to testify. The motion is **DENIED IN PART** to the extent that Plaintiff may introduce at trial the medical records submitted to the Court in response to the Court's September 9, 2016 Order, as redacted by Defendants, [Filing No. 104-4], but only if Plaintiff presents a certification for those records.

Again, the Court reminds the parties that all of its rulings on the motions in limine are preliminary, and if a party believes that the opposing party has opened the door to the precluded evidence, it must ask the Court for leave to present that evidence.

### IV.     Defendants' Amended Exhibit List

Defendants submitted an Amended List of Trial Exhibits on September 15, 2016, [Filing No. 103], and Plaintiff's filed an objection to Exhibit 1 which are Indianapolis Metropolitan Police Department Police Report Nos. 13-0147609 and 13-0147597-0000, [Filing No. 106].  Plaintiff's sole objection is that the police reports are hearsay under Fed. R. Evid. 803.  [Filing No. 106.]

The Court notes at the outset that Defendants listed the police reports in question on their August 25, 2016 trial exhibit list, [Filing No. 82], but Plaintiff did not object to the reports either before or at the final pre-trial conference.  Additionally, Plaintiff himself listed the police reports on his trial exhibit list and his amended trial exhibit list.  [*See* Filing No. 80; Filing No. 87.]  The Court will not entertain further objections prior to trial that should have been raised before or at the final pre-trial conference, and could overrule Plaintiff's objection due to untimeliness alone. It will, however, consider the merits of the objection in the interest of efficiency.

Police reports are admissible as public records to the extent that they "describe[e] a matter that a police officer observed while under a duty to report…." *Cairel v. Alderden*, 2014 WL 916364, *1 (N.D. Ill. 2014) (citing Fed. R. Evid. 803(8)); *see also Jordan v. Binns*, 712 F.3d 1123, 1133 (7th Cir. 2013) (noting that "police reports have generally been excluded except to the extent to which they incorporate firsthand observations of the officer") (citations and quotations omitted). Statements in police reports that do not reflect firsthand observations of the officers – for example, a statement by a third person – are not admissible unless they fall within another exception to the hearsay rule.  *Id.* ("third-party statements contained in a police report do not become admissible

10

for their truth by virtue of their presence in a public record and instead must have an independent basis for admissibility").

Without knowing the contents of the police reports, and how Defendants plan to use them at trial, the Court cannot determine whether they are admissible. The Court **DENIES** Plaintiff's Objection to Defendants' Proposed Trial Exhibits, [Filing No. 106], without prejudice to raise his objection to the police reports at trial. At that point, the Court can rule on the objection in an informed manner.

### V.     Plaintiff's Motion to Preclude Reference to Deposition Testimony

Plaintiff filed a Motion to Preclude Use or Reference to Deposition Testimony of Anthony Bridgewater and/or Crystal Bridgewater, [Filing No. 105], in which he argues that Defendants should not be permitted to use the Bridgewaters' deposition testimony at trial because the court reporting company Defendants retained, Circle City Reporting, has a financial interest in the outcome of this case. Specifically, Plaintiff contends that because Defendants have a "contract with Circle City Reporting wherein Circle City Reporting provides the Defendants with court reporting services on a contractually negotiated rate," and since Circle City Reporting did not offer the reduced rate to Plaintiff, the depositions are void under Ind. Code § 33-41-3-5 (providing that "[a] deposition may not be taken by a person who is…someone with a financial interest in the proceeding or its outcome"). [Filing No. 105 at 1.]

Defendants explain in their response to Plaintiff's motion that they do not have a contract with Circle City Reporting that entitles them to a reduced rate, and provide an affidavit from the owner of Circle City Reporting, Rita Pratt, to confirm that point. [Filing No. 110 at 2; Filing No. 110-1.] Defendants also contend that the Indiana statutes Plaintiff relies upon do not apply to the City of Indianapolis. [Filing No. 110 at 4.]

Defendants have cleared up any confusion regarding whether Circle City Reporting has a contract with Defendants to provide services at a lower, negotiated rate – it does not.  In any event, even if such an agreement existed (and even assuming the statutes Plaintiff relies upon apply to Defendants), offering a lower rate to one party based on negotiations with that party does not translate into Circle City Reporting having any financial interest whatsoever in the outcome of the case.  Plaintiff's Motion to Preclude Reference to Deposition Testimony borders on frivolous, and is **DENIED**.  [Filing No. 105.]

To re-cap:

- Plaintiff may not present any of his medical providers or Hannah Slack to testify at trial;

- Plaintiff may present the medical records contained at Filing No. 104-4, in that form only, as long as he provides the Court with a certification for those records;

- Defendants' Motion in Limine #4 is **GRANTED IN PART**, their Motion in Limine #6 is **GRANTED**, and their Motion in Limine #7 is **GRANTED IN PART** and **DENIED IN PART** as set forth above;

- Plaintiff's objection relating to Defendants' introduction of the police reports at trial is **DENIED WITHOUT PREJUDICE** to assert the objection at trial, when the Court can examine the contents of the reports; and

- Plaintiff's Motion to Preclude Use or Reference to Deposition Testimony of Anthony Bridgewater and/or Crystal Bridgewater, [Filing No. 105], is **DENIED**.

Date: 9/26/2016

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**